1
2
3
4              UNITED STATES DISTRICT COURT
5             NORTHERN DISTRICT OF CALIFORNIA
6
7    HVAC TECHNOLOGY LLC,              Case No. 5:15-cv-02934-PSG
8              Plaintiff,              **CLAIM CONSTRUCTION ORDER**
9        v.                           **(Re:  Docket No. 27)**
10   SOUTHLAND INDUSTRIES,
11             Defendant.
12
13          Largely unseen and unsung, heating, ventilation and air conditioning systems provide

14   warmth in the winter and relief in the summer in office buildings worldwide, including this very

15   courthouse.  This dispute gives HVAC systems their moment: Plaintiff HVAC Technology LLC

16   alleges that Defendant Southland Industries infringes both U.S. Patent Nos. 7,444,731 and

17   7,478,761.  The parties submitted ten terms and phrases in claims in the '731 and '761 patents for

18   construction, and the court issued a summary order last month.[1]  The court explained that a more

19   complete order would follow providing its reasoning.[2]  The court now does just that.

20                                    **I.**

21          This case is about methods of transporting HVAC piping structures and HVAC flow

22   control systems.

23          The '731 patent was filed on Dec. 6, 2006 and issued on Nov. 4, 2008.[3]  The '731 patent

24   _____

25   [1] *See* Docket Nos. 27, 38.

26   [2] *See* Docket No. 38 at 2.

27   [3] *See* Docket No. 31-3 at 1.

28   Case No. 5:15-cv-02934-PSG
     CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

claims a method for "transporting an HVAC pipe assembly" and a method for "supporting an HVAC pipe assembly," each requiring a bracket.[4]  Figure 1 illustrates a bracket "for mounting or transporting pipe or conduit with a built-in handle."[5]



Figure 1 shows a bracket 100 that "includes body 110, arms 120 with support guides 130."[6]  "Base 150 connects to body 110 and allows for bracket 100 to be mounted to a surface," such as a duct.[7]

Claim 1 of the '731 patent reads:

> 1. A method of transporting an HVAC pipe assembly, comprising:
>     securing the HVAC pipe assembly to a bracket;
>     mounting the bracket to an HVAC duct;
>     positioning the bracket proximate to a transporting surface;
>     loading the bracket to the transporting surface;

---

[4] *Id.* at col. 5 ll. 5-15, 37-45.

[5] *Id.* at col. 2 ll. 32-33.

[6] *Id.* at col. 2 ll. 33-34.

[7] *Id.* at col. 2 ll. 62-63.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

transporting the HVAC pipe assembly by transporting the transporting
surface;
maintaining alignment of the HVAC pipe assembly to the HVAC duct with
the bracket while transporting the HVAC pipe assembly.[8]

The '761 patent was filed on Mar. 6, 2002 and issued on Jan. 20, 2009.[9]  The '761 patent

claims a "ventilation flow control unit" and methods of "installing a ventilation flow control unit."

Figure 1 illustrates a "ventilation flow control system 100" that includes "a supply flow control

unit 102, a return flow control unit 104, an exhaust flow control unit 106, a master controller 108,

one or more sensors 110, and a user interface 112."[10]



FIG. 1

Claim 1 of the '761 patent reads:

1. A ventilation flow control unit comprising:
a plenum;
a flow controller mounted to said plenum;
an isolation valve fixed to said plenum to selectively block the flow of air
between said plenum and said flow controller; and

---

[8] *Id.* at col. 5 ll. 5-15.

[9] *See* Docket No. 31-2.

[10] *Id.* at sheet 1, col. 3 ll. 40-46,

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

a flow sensor mounted to said plenum; and
wherein said plenum, said flow controller, said isolation valve, and said
flow sensor are preassembled to form said ventilation flow control
unit, thereby enabling said ventilation flow control unit to be
installed in an HVAC system as a single unit.[11]

After the *Markman* hearing, the court construed the disputed claim terms as follows:[12]

| Patent Nos. | Claim Term/Phrase | Construction |
|---|---|---|
| '731 | "bracket" | "a structure having a body, an arm coupled to the body, a support guide located within the arm and configured to provide support to a pipe, a base coupled to the body and configured to attach to a platform, the base further configured to provide support to the body" |
| '761 | "protection bracket" | plain and ordinary meaning |
| '731, '761 | "mounting (in/to) / mounted (in/to/on)" | plain and ordinary meaning |
| '731 | "loading . . . to" | "physically attaching . . . to, setting . . . in or on, or engaging . . . to or with" |
| '761 | "ventilation flow control unit" | plain and ordinary meaning |
| '731 | "HVAC pipe assembly" | plain and ordinary meaning |
| '761 | "preassembled / preassembling" | plain and ordinary meaning |
| '731 | "positioning / positioning . . . proximate to" | plain and ordinary meaning |
| '731 | "transporting surface" | plain and ordinary meaning |
| '761 | "riser" | plain and ordinary meaning |

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further

consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and

---

[11] *Id.* at col. 7 ll. 7-18.

[12] *See* Docket Nos. 37, 38.

Fed. R. Civ. P. 72(a).[13]

Eleven years after the Federal Circuit's seminal *Phillips* decision,[14] the canons of claim construction are now well-known—if not perfectly understood—by both parties and courts. "To construe a claim term, the trial court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing."[15] This requires a careful review of the intrinsic record comprised of the claim terms, written description and prosecution history of the patent.[16] While claim terms "are generally given their ordinary and customary meaning," the claims themselves and the context in which the terms appear "provide substantial guidance as to the meaning of particular claim terms." Indeed, a patent's specification "is always highly relevant to the claim construction analysis."[17] Claims "must be read in view of the specification, of which they are part."[18] In some cases, "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."[19] Although the patent's prosecution history "lacks the clarity of the specification and thus is less useful for claim construction purposes," it "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of

---

[13] *See* Docket Nos. 8, 15.

[14] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

[15] *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008).

[16] *See id.* ("To construe a claim term, the trial court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing. Intrinsic evidence, that is the claims, written description, and the prosecution history of the patent, is a more reliable guide to the meaning of a claim term than are extrinsic sources like technical dictionaries, treatises, and expert testimony.") (citing *Phillips*, 415 F.3d at 1312).

[17] *Phillips,* 415 F.3d at 1312–15.

[18] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995); *see also Ultimax Cement Mfg. Corp v. CTS Cement Mfg. Corp.*, 587 F. 3d 1339, 1347 (Fed. Cir. 2009).

[19] *Phillips*, 415 F.3d at 1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

1   prosecution, making the claim scope narrower than it would otherwise be."[20]   The court also has

2   the discretion to consider extrinsic evidence, including dictionaries, learned treatises and

3   testimony from experts and inventors.[21]   Such evidence, however, is "less significant than the

4   intrinsic record in determining the legally operative meaning of claim language."[22]

### III.

6       The court explains its construction of the ten disputed claim terms as follows.

### A.  Issue #1: "bracket"

| CLAIM TERM #1 | |
|---|---|
| "bracket" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "a structure (body, arms with support guides) mounted to support at least one pipe" |
| **CONSTRUCTION** | |
| "a structure having a body, an arm coupled to the body, a support guide located within the arm and configured to provide support to a pipe, a base coupled to the body and configured to attach to a platform, the base further configured to provide support to the body" | |

16      The term "bracket" appears in each independent claim of the '731 patent (claims 1, 9 and

17   18).  The specification describes the '731 patent's invention as

        a method of transporting a pipe mounted within a plurality of brackets, each bracket
        having a body, an arm coupled to the body, a support guide located within the arm
        and configured to provide support to the pipe, a base coupled to the body and
        configured to attach to a platform, the base further configured to provide support to
        the body.[23]

---

[20] *Phillips*, 415 F.3d at 1317 (internal quotations omitted).

[21] *See id.* ("Although we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'") (quoting *Markman*, 52 F.3d at 980).

[22] *Id.* (citing *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)) (internal quotations and additional citations omitted).

[23] Docket No. 31-3 at col. 1 ll. 58-63.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

1   The court's construction of "bracket" is consistent with the specification's description of a bracket.

2   HVAC Technology raises four disputes as to the construction of "bracket."  First, HVAC

3   Technology contends that no construction is necessary because people are familiar with brackets

4   and the patentee did not manifest any intent to give a special definition of "bracket."[24]  Second,

5   this construction does not include several common types of brackets and improperly imports

6   limitations from the specification and examples of brackets given in the specification.[25]  Third,

7   based on the intrinsic evidence, the construction must cover brackets that are flat and lack any

8   bend.[26]  Fourth, the construction does not cover the protection bracket disclosed in the '761

9   patent.[27]

10   The patent itself belies HVAC Technology's first argument: the patentee plainly

11   manifested an intent to give a special definition of "bracket"—both the abstract and the

12   specification define the brackets used in the invention.[28]  The specification describes the brackets

13   used in the invention as

14          having a body, an arm coupled to the body, a support guide located within the arm
           and configured to provide support to the pipe, a base coupled to the body and
15          configured to attach to a platform, the base further configured to provide support to
           the body.[29]
16
17   By describing the characteristics of the brackets used in the invention, the patentee gave the claim

     term "a special definition . . . that differs from the meaning it would otherwise possess."  The
18
     court thus defers to the inventor's lexicography, which governs.[30]  Both an ordinary person and a
19

20   _____

21   [24] See Docket No. 28 at 5; Docket No. 32 at 6-7.

22   [25] See Docket No. 28 at 5; Docket No. 32 at 8-9.

23   [26] See Docket No. 28 at 7-8; Docket No. 32 at 9-10.

24   [27] See Docket No. 32 at 7-8.

25   [28] See Docket No. 31-3 at abstract, col. 1 ll. 58-66.

26   [29] Id. at col. 1 ll. 58-63.

27   [30] See Phillips, 415 F.3d at 1316 (citing CCS Fitness, Inc., 288 F.3d at 1366).

28                                                     7
     Case No. 5:15-cv-02934-PSG
     CLAIM CONSTRUCTION ORDER

POSITA may be "familiar with all manner of brackets in use around the house"[31]—but the claimed invention does not involve all manner of brackets in the context of household use, but rather covers use of a bracket with certain characteristics in the specific context of transporting an HVAC pipe assembly.  The patentee defined "bracket" to have certain characteristics, and so the term must be construed according to the definition given to it by the patentee.

HVAC Technology's second argument relies on two false assumptions: first, that the construction of "bracket" must encompass all types of brackets, and second, that it is improper to consider the specification in construing "bracket."  HVAC Technology describes several brackets used in plumbing and home use—for example, to permanently secure objects to walls—and argues that the construction of "bracket" must cover these brackets.[32]  HVAC Technology provides no explanation of how these brackets are relevant to the '731 patent's bracket, which has certain characteristics and is used not for permanently securing objects to walls, but for transporting and supporting HVAC pipe assemblies.  HVAC Technology also provides no authority for its position that the construction of "bracket" must be so broad as to cover brackets that are not relevant to the purpose of the patent's claimed invention.  The specification gave a particular definition of bracket, and Figure 2 of the '731 patent supports this definition of "bracket."  It depicts a "[b]racket 200," which "includes body 210, arms 220 with support guides 230. . . . Base 250 connects to body 210."[33]  Contrary to HVAC Technology's assertion, it is entirely proper, and indeed necessary, for the court to look to the specification, which "is always highly relevant to the claim construction analysis."[34]

HVAC Technology's third argument is that based on the intrinsic evidence, the

---

[31] Docket No. 28 at 4.

[32] *See* Docket No. 28 at 5; Docket No. 32 at 8-9.

[33] *Id.* at col. 3 ll. 16-32.

[34] *Phillips,* 415 F.3d at 1312–15.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

construction must cover brackets that are flat and lack any bend.[35]  HVAC Technology points to Figs. 18 and 19 of U.S. Patent No. 6,951,324, the entire disclosures of which the '731 patent incorporates by reference.[36]  The construction adopted by the court does not require brackets to have a bend, L-shaped or otherwise.  For example, Fig. 2 of the '731 patent depicts one embodiment of a bracket that is flat and has a body 210, arms 220 with support guides 230 and a base 250 that is configured to allow the bracket to be attached to a surface[37]:



**FIG. 2**

HVAC Technology's fourth argument, that the construction must cover the "protection bracket" disclosed in the '761 patent,[38] also lacks merit.  The '731 and '761 patents do not incorporate each other by reference and are not related, and so there is no reason that the term "bracket" in the '731 patent must cover the term "protection bracket" in the '761 patent.

---

[35] *See* Docket No. 28 at 7-8; Docket No. 32 at 9-10.

[36] *See* Docket No. 31-3 at col. 1 ll. 7-12; Docket No. 28 at 7-8.

[37] Docket No. 31-3 at Fig. 2, col. 3:16-32.

[38] *See* Docket No. 32 at 7-8.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

| CLAIM TERM #2 | |
| --- | --- |
| "protection bracket" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "a base with an opening to allow a valve stem to pass through it, as well as a pair of risers which extend upward to protect the valve" |
| **CONSTRUCTION** | |
| plain and ordinary meaning | |

The term "protection bracket" appears in dependent claims 11, 12 and 23 of the '761 patent.  Claim 11 claims a "ventilation flow control unit according to claim 8, further comprising a protection bracket mounted to protect said automatic valve from damage during transportation and installation of said ventilation flow control unit."[39]  Claim 12 limits the protection bracket in claim 11 as including "a base defining an opening to facilitate the passage of a valve stem; a first riser extending from a first edge of said base; and a second riser extending from a second edge of said base opposite said first edge.[40]  Claim 23 claims a "method of installing a ventilation flow control unit according to claim 21, wherein said step of mounting an automatic valve in said fluid line includes mounting a protective bracket around said automatic valve."[41]

Southland argues that the plain and ordinary meaning is too broad and that in the context of the '761 patent, the protection bracket protects valves from being physically damaged by use of risers that extend farther away from the duct than the valves incorporated into the pipe assembly do, and so this limitation must be reflected in the construction.[42]  Neither the claims nor the specification, however, supports Southland's proposed construction.  "Protection bracket" appears

[39] Docket No. 31-2 at col. 7 ll. 59-62.

[40] *Id.* at col. 7 ll. 63-col. 8 ll. 2.

[41] *Id.* at col. 8 ll. 60-63.

[42] *See* Docket No. 31 at 5-6.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

in claims 11 and 23, which do not provide any description or limitation of the protection bracket's characteristics or the means by which it functions.  Claim 12 does limit "protection bracket" with limitations similar to Southland's proposed construction, but it is a dependent claim of claim 11. The "protection bracket" in claims 11 and 23 logically must have a broader meaning than that disclosed by claim 12.

Furthermore, claim terms "are generally given their ordinary and customary meaning," and the '761 patent's specification does not provide guidance on the meaning of "protection bracket." Fig. 6 depicts a protection bracket 226 that has a base portion 602 that defines an aperture 606 for the passage of an automatic stem valve, and that also has a pair of risers 604[43]:



FIG. 6

The specification states, however, that a POSITA "will recognize . . . that the invention may be practiced apart from [the] specific details" set forth in the description and figures.[44]  Fig. 6 depicts one embodiment of a protection bracket, such as that claimed by claim 12, but the specification does not reveal "an intentional disclaimer, or disavowal, of claim scope by the inventor."[45]

---

[43] *See* Docket No. 31-2 at Fig. 6, col. 6 ll. 31-38.

[44] *Id.* at col. 3 ll. 34-35.

[45] *Phillips*, 415 F.3d at 1316.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

| CLAIM TERM #3 | |
|---|---|
| "mounting (in/to) / mounted (in/to/on)" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "Mount" means ~~physically~~ attach.<br>"Mounting (in/to)" means ~~physically~~ attaching.<br>"Mounted (in/to/on)" means ~~physically~~ attached. |
| **CONSTRUCTION** | |
| plain and ordinary meaning | |

The term "mounting (in/to) / mounted (in/to/on)" appears in claims 1, 9 and 20 of the '731 patent and claims 1, 2, 7-11, 15-17, 21-29, 31, 33-35, 39 and 41-46 of the '761 patent.  The specification of the '731 patent provides examples of "mounting" and states that a bracket 100 may be "mounted in any secure manner, for example welded, screwed, and bolted."[46]  The specification of the '761 patent does not address the definition of "mounting (in/to) / mounted (in/to/on)."  Neither specification describes "mounting" as "attaching."  Southland argues that the term should be construed as "attach," "attaching" or "attached," but does not explain why.  The claim term thus is given its plain and ordinary meaning.

---

[46] Docket No. 31-3 at col. 2 ll. 63-65.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

United States District Court
Northern District of California

| CLAIM TERM #4 | |
|---|---|
| "loading to" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| "loading . . . to" means setting a first object on a second object, or attaching a first object to a second object, or hanging a first object from a second object, or engaging a first object with a second object, or containing a first object within a second object, or having a second object stick into a hole in a first object, or having a second object somehow grasp a first object, such that if the second object is moved then the first object will also be moved, and therefore will be transported or moved along with the second object. The phrase "loading . . . to" does not require that the first object be attached to the second object. | "Loading . . . to" means physically attaching, setting, or engaging to. |
| **CONSTRUCTION** | |
| physically attaching . . . to, setting . . . in or on, or engaging . . . to or with | |

The term "loading to" appears in claim 1, 9 and 18 of the '731 patent.  Independent claims 1 and 18 claim a "method of transporting an HVAC pipe assembly, comprising: . . . loading the bracket to the transporting surface."[47]  Independent claim 9 similarly claims a "method of supporting an HVAC pipe assembly, comprising: . . . loading the bracket to the transporting surface."[48]  Claim 8, which is a dependent claim of claim 1, and claim 19, which is a dependent claim of claim 18, state that the "transporting surface comprises a member selected from the group consisting of a human hand, a forklift, a lifting device, a shipping crate, a box, and a flatbed truck."[49]  Because independent claims 1, 9 and 18 use the language "loading the bracket to the transporting surface," and dependent claims specifically define the "transporting surface" as a human hand, a forklift, a lifting device, a shipping crate, a box and a flatbed truck, the construction

---

[47] Docket No. 31-3 at col. 5 ll. 5-15, col. 6 at ll. 27-37.

[48] *Id.* at col. 5 ll. 37-45.

[49] *Id.* at col. 5 ll. 33-36, col. 6 ll. 38-41.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

1    of "loading . . . to" must encompass loading a bracket to each of those transporting surfaces.

2          HVAC Technology argues that Southland's proposed construction does not make it clear

3    that putting something in a box or lifting something by a handle is covered by the term.  The

4    court's construction resolves these concerns, encompasses all of the various "transporting

5    surfaces" disclosed in claims 8 and 19 and takes into consideration the fact that the invention is

6    directed toward components of HVAC systems.

7

| CLAIM TERM #5 | |
|---|---|
| "ventilation flow control unit" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "Ventilation flow control unit" means a section of a HVAC system made up of a plenum, a flow control sensor, a flow controller (e.g., damper) and optionally a heating coil |
| **CONSTRUCTION** | |
| plain and ordinary meaning | |

16          The term "ventilation flow control unit" appears in independent claims 1, 8, 16, 21, 25, 27,

17   42 and 44 of the '761 patent, and several dependent claims.  Claims 1, 8, 16 and 44 each claim a

18   "ventilation flow control unit comprising" various elements and claims 21, 25, 27 and 42 each

19   claim a method of "installing a ventilation flow control unit."[50]

20          Southland argues that the claims define the term "ventilation flow control unit" and

21   enumerate the component parts that are needed to make up a "ventilation flow control unit."[51]

22   This is precisely why the term needs no construction.  "Ventilation flow control unit" appears in

23   the preamble of each independent claim, and "a preamble is not limiting 'where a patentee defines

24

_____

25   [50] *See* Docket No. 31-2 at col. 7 ll. 7-18, 38-52, col. 8 ll. 14-31, 46-54, col. 9 ll. 1-10, 16-25, col.

26   10 ll. 31-38, 43-57.

27   [51] Docket No. 31 at 9-10.

28

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"[52]  The patentee defined a structurally complete invention in the claim body of claims 1, 8, 16 and 44 by listing the limiting components of the ventilation flow control unit, and so the preamble is not limiting.

| CLAIM TERM #6 | |
|---|---|
| "HVAC pipe assembly" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "HVAC pipe assembly" means a portion of an HVAC system which includes ducts and pipes |
| **CONSTRUCTION** | |
| plain and ordinary meaning | |

The term "HVAC pipe assembly" appears in independent claims 1, 9 and 18 and dependent claims 2, 10 and 11 of the '731 patent.

Southland argues that the word "HVAC" modifies the phrase "pipe assembly," and so the term must include a duct, because a pipe assembly that is not attached to a duct is a mere pipe assembly and not an HVAC pipe assembly.[53]  Southland refers to Fig. 4 of the '731 patent, which includes a duct 420.  There is no basis for Southland's position, however, because the specification does not limit "HVAC pipe assembly" to include a duct.  Fig. 4 and its accompanying description make this clear.  Fig. 4 illustrates

> two brackets supporting a pipe assembly ready for transport. . . . In FIG. 4, pipe assemblies 400 include 2 pipes and hardware, supporting by brackets 410. . . . Also illustrated . . . is duct 420, which *may* be transported with pipe assemblies 400. . . . [I]f pipe assemblies 400 are *not attached to duct 420* then they may be transported on the base of brackets 410.[54]

---

[52] *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1357 (Fed. Cir. 2014).

[53] *See* Docket No. 31 at 10.

[54] Docket No. 31-3 at col. 4 ll. 1-29 (emphasis added).

15

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

1    Southland is correct that Fig. 4 includes a duct 420, but Fig. 4 depicts pipe assemblies as separate

2    from ducts.  Fig. 4 explicitly contemplates that a pipe assembly may be either attached or not

3    attached to a duct, and even if it is not attached, it still is a pipe assembly.

4

| CLAIM TERM #7 | |
|---|---|
| "preassembled / preassembling" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "Preassembled" means assembled before being installed as a unit |
| | "Preassembling" means assembling before being installed as a unit |
| **CONSTRUCTION** | |
| plain and ordinary meaning | |

        The term "preassembled / preassembling" appears in independent claims 1, 8, 16, 21, 25,

27, 42 and 44 of the '761 patent and dependent claims 22, 24, 26 and 28-33.

        Southland argues that the purpose of the patent is the invention of preassembled ventilation

flow control units, methods for the transport of the units and their installation as a unit at the

installation site.[55]  Independent claims 1, 8, 16 and 44, which each claim a ventilation flow control

unit comprising various components, claim that the components are "preassembled to form said

ventilation flow control unit, thereby enabling said ventilation flow control unit to be installed in

an HVAC system as a single unit."[56]  In these claims, the preassembly of the ventilation flow

control unit enables the unit to be installed—but this does not require that installation actually

occur.  Southland's proposed construction thus unduly narrows the claim term and imposes

limitations not found in the patent claims.  Independent claims 21, 25, 27 and 42 each claim a

---

[55] *See* Docket No. 31 at 12.

[56] Docket No. 31-2 at col. 7 ll. 15-19, 49-51, col. 8 ll. 28-31, col. 9 ll. 54-56.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

"method of installing a ventilation flow control unit, comprising: preassembling said flow control unit . . . and installing said preassembled flow control unit."[57]  These claims explicitly require installation of the preassembled ventilation flow control unit, rendering Southland's proposed construction redundant.

| CLAIM TERM #8 | |
|---|---|
| "positioning / positioning . . . proximate to" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "Positioning . . . proximate to" means moving the bracket from where it was fabricated to an area close to the transportation surface |
| **CONSTRUCTION** | |
| plain and ordinary meaning | |

The term "positioning / positioning . . . proximate to" appears in independent claims 1, 9 and 18 of the '731 patent.  Claims 1 and 18 claim a "method of transporting an HVAC pipe assembly, comprising: . . . positioning the bracket proximate to a transporting surface," and claim 9 claims a "method of supporting an HVAC pipe assembly, comprising: . . . positioning the bracket proximate to a transporting surface."[58]

Southland argues that "proximate" is not a common word and that its proposed construction simply means "a position close to the transporting surface."[59]  Southland's proposed construction, however, adds two limitations: moving the bracket "from where it was fabricated" and moving it "to an area close to the transportation surface."[60]  Nothing in the claims or

---

[57] *Id.* at col. 8 ll. 46-53, col. 9 ll. 1-9, 15-25, col. 10. 31-38.

[58] Docket No. 31-3 at col. 5 ll. 5-15, 37-45, col. 6 ll. 27-37.

[59] Docket No. 31 at 13.

[60] *Id.* at 12.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

specification requires these limitations and Southland does not identify any intrinsic evidence supporting these limitations.

| CLAIM TERM #9 | |
| --- | --- |
| "transporting surface" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "Transporting surface" means any ~~physical~~ surface on or by which the unit is moved to the installation site |
| **CONSTRUCTION** | |
| plain and ordinary meaning | |

The term "transporting surface" appears in independent claims 1, 9 and 18 and dependent claims 8, 17 and 19 of the '731 patent. Claims 1 and 18 claim a "method of transporting an HVAC pipe assembly" and claim 9 claims a "method of supporting an HVAC pipe assembly."[61] Claims 1, 9 and 18 comprise "positioning the bracket proximate to a transporting surface; loading the bracket to the transporting surface" and claims 1 and 18 include a further limitation of "transporting the HVAC pipe assembly by transporting the transporting surface."[62] Claims 8, 17 and 19 each claim the methods according to claims 1, 9 and 18, respectively, "wherein the transporting surface comprises a member selected from the group consisting of a human hand, a forklift, a lifting device, a shipping crate, a box, and a flatbed truck."[63]

Southland argues that the construction of "transporting surface" must include the limitation that the HVAC pipe assembly be moved to an installation site.[64] Southland does not identify any

---

[61] Docket No. 31-3 at col. 5 ll. 5-15, 37-45, col. 6 ll. 27-37.

[62] *Id.*

[63] *Id.* at col. 5 ll. 33-36, col. 5 ll. 22-26, 38-41.

[64] *see* Docket No. 31 at 13-14.

18

United States District Court
Northern District of California

1   intrinsic evidence supporting these limitations.  The claimed inventions are methods of

2   transporting and supporting the HVAC pipe assembly, and neither the claims nor the specification

3   restricts to where the HVAC pipe assembly is being transported.

4

| CLAIM TERM #10 | |
|---|---|
| "riser" | |
| **HVAC Technology's Preferred Construction** | **Southland's Preferred Construction** |
| plain and ordinary meaning | "Riser" means a part of a protective bracket which extends up from the edge of the bracket's base to protect the pipe(s) |
| **CONSTRUCTION** | |
| plain and ordinary meaning | |

The term "riser" appears in claim 12 of the '761 patent, which claims a ventilation flow
control unit comprising a protection bracket, "wherein said protection bracket includes: a base
defining an opening to facilitate the passage of a valve stem; a first riser extending from a first
edge of said base; and a second riser extending from a second edge of said base opposite said first
edge."[65]

Southland argues that its proposed construction takes the context of the invention into
account and uses plain and ordinary language that the jury can understand.[66]  But riser is not a
complicated term; it is an ordinary English word.  Moreover, the claim itself includes Southland's
proposed limitations, by limiting the protection bracket as including "a first riser extending from a
first edge" and "a second riser extending from a second edge."  In light of the limitations already
present in the claim, Southland's proposed construction is unnecessary.

---

[65] Docket No. 31-2 at col. 7 ll. 63-67, col. 8 ll. 1-2.

[66] *See* Docket No. 31 at 14.

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER

United States District Court
Northern District of California

**SO ORDERED.**

Dated: June 2, 2016

PAUL S. GREWAL
United States Magistrate Judge

United States District Court
Northern District of California

Case No. 5:15-cv-02934-PSG
CLAIM CONSTRUCTION ORDER